UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CAPITOL INDEMNITY CORP.,** | ) | CASE NO. 1:14 CV 822 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| **FIRST OHIO BANC &** | ) | |
| **LENDING, INC, et al.,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Defendants.** | ) | (Resolving Docs. # 26 & 27) |

This matter is before the Court on the Motions for Summary Judgment filed by Defendants Erin Doskocil and Kirk Doskocil (Doc. # 26) and by Plaintiff Capitol Indemnity Corp. (Doc. # 27). For the reasons that follow, Defendants' Motion is GRANTED; Plaintiff's Motion is DENIED.

**I.  FACTS**

The facts underlying both motions are undisputed. Defendant Kirk Doskocil was the President of First Ohio Banc & Lending, Inc., a mortgage broker and financial institution as defined by O.R.C. § 1322.01. Defendant Erin Doskocil is named in and signed the General Indemnity Agreement attached to the Complaint along with Kirk Doskocil and First Ohio (collectively "Defendants"). Plaintiff, Capitol Indemnity ("Plaintiff"), is a Wisconsin corporation licensed to act as a commercial surety in the State of Ohio. Pursuant to O.R.C. § 1332.05, Defendant First Ohio was required to obtain a surety bond to operate. Plaintiff, as

surety, executed Bond No. LPO745411 ("2000 Bond") on January 15, 2000, with Defendant First Ohio as principal and the Superintendent of Financial Institutions for the State of Ohio as obligee, for a penal sum of $25,000.00. Plaintiff did not produce a copy of the 2000 Bond with the Complaint or in conjunction with either Motion for Summary Judgment. According to the affidavit submitted by Ron Wills, acting Senior Bond Claims Specialist for Plaintiff, Plaintiff issued multiple riders that increased or decreased the penal sum on the 2000 Bond depending on the number of locations Defendant First Ohio maintained. (Doc. #26, Ex. A.) According to Mr. Wills, when the 2000 Bond was cancelled by Plaintiff on February 15, 2008, effective April 30, 2008, the penal sum of the Bond was $210,000.00. (Doc. #26, Ex. A.) The copy of Plaintiff's cancellation notice attached to Mr. Wills's deposition indicates that Plaintiff "has elected to cancel said bond in its entirety" because the "principal no longer meets underwriting criteria." (Doc. # 26, Ex. A, Ex. 1.) After cancelling the 2000 Bond, Plaintiff did not issue Defendants any other surety bonds in the State of Ohio. (Doc. #26, Ex. B "Plaintiff's Response to Defendant Request for Admissions.") According to the Wills Affidavit, although no further bonds were issued by Plaintiff in Ohio, bonds were issued both before and after the Ohio cancellation in Florida; Virginia; Maryland; and Connecticut (none of which are at issue herein). (Doc. #28, Ex. B.)

Approximately two and a half years after the cancellation of the 2000 Bond, Defendants executed a General Indemnity Agreement, dated November 29, 2010 ("2010 Agreement"). Although Plaintiff has now produced additional indemnity agreements pre-dating the 2010 Agreement, the Complaint and the Motions before the Court are solely based on the 2010 Agreement. The General Indemnity Agreement obligates Defendants to "hold and save harmless the Surety against all demands, claims, losses, costs, damages, expenses, and fees including any

2

attorneys' fees whatsoever" incurred due to the execution of Bonds or "prosecuting or defending any action brought in connection therewith." (Doc. #1, Ex. A.)

On or about January 6, 2011, Plaintiff was named a defendant in a Lorain County Court of Common Pleas matter captioned *Lynn A. Strickler, et al. v. First Ohio Banc & Lending, Inc.*, identified by case number 07-CV-151964. According to Plaintiff, pursuant to this 2010 Agreement, on January 21, 2013 Plaintiff made a demand on Defendants for the attorney fees and expenses it had incurred in the Lorain County suit. Plaintiff alleges, and Defendants concede, that payment was not forthcoming. Plaintiff now seeks the costs associated with the suit and damages due to Defendants' alleged breach of the 2010 General Indemnity Agreement, as well as "common law indemnification" and specific performance of the 2010 Agreement. (Doc. #1.) Defendants do not dispute the existence and cancellation of the 2000 Bond, the penal amount of the 2000 Bond at cancellation, or the existence and their execution of the 2010 Agreement. Defendants contend that the 2010 Agreement does not apply to create liability for losses associated with a bond that was cancelled more than two years before the agreement was executed.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). A fact must be essential to the outcome of a lawsuit to be 'material.' *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will be entered when a party fails to make a "showing sufficient to establish . . . an element essential to that party's case." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23. "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden*." Bell v. Ohio State Univ*., 351 F.3d 240, 253 (6th Cir. 2003).

Summary judgment creates a burden-shifting framework. See *Anderson*, 477 U.S. 250. The moving party has the initial burden of showing there is no genuine issue of material fact. *Plant v. Morton Int'l, Inc*., 212 F.3d 929, 934 (6th Cir. 2000). Specifically,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

The burden then shifts to the nonmoving party to prove that there is an issue of material fact that can be tried*. Plant,* 212 F.3d at 934. If this burden is not met, the moving party is then entitled to a judgment as a matter of law. *Bell*, 351 F.3d at 253. When evaluating a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The non-moving party may not simply rely on its pleadings; rather it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1996). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

4

**III.    ANALYSIS**

    a) **Breach of Contract**

Because this matter was filed pursuant to this Court's diversity jurisdiction, state law governs the substantive issues and federal law governs the procedural issues. *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425–26 (6th Cir. 2009). "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008) (applying Ohio law) *inter alia*). The interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court. *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271, 272–73 (1984).

"The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007). "The intent of the parties is presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (1996); *accord State ex. rel Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 820 N.E.2d 910, 915 (2004). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 875 N.E.2d at 566. "[W]here the terms in

5

an existing contract are clear and unambiguous, this court cannot . . . create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978)). Extrinsic evidence is admissible "to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham*, 667 N.E.2d at 952; accord *R.J. Reynolds*, 820 N.E.2d at 915. Nevertheless, a court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties" in the terms of their written contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261–62 (2003).

Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003). "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Id.* at 190. In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri–State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 782 N.E.2d 1240, 1246 (2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 50 Ohio App. 277, 197 N.E. 923, 926 (1934)), so as "to give reasonable effect to every provision in the agreement." *Stone v. Nat'l City Bank*, 106 Ohio App.3d 212, 665 N.E.2d 746, 752 (1995). "The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Burris v. Grange Mut. Co.*, 46 Ohio St.3d 84, 545 N.E.2d 83, 88 (1989) (quoting *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984)). "[C]ommon words appearing in the written instrument are to be

given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander*, 374 N.E.2d at 150. If the language in the contract is ambiguous, the court should generally construe it against the drafter. *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003) (applying Ohio law).

Defendants contend that the plain language of the 2010 Agreement operates only prospectively for the purpose of obtaining bonds in the future and for potential forbearance against cancelling such future bonds. Defendants assert that the recital describing "bonds" limits the 2010 Agreement to any bond obtained on or after the date of the agreement. Defendants urge that the agreement should be limited to a single category of bonds, those dated contemporaneously with or later than the execution of the 2010 Agreement. Plaintiffs, by contrast, contend that the 2010 Agreement should cover three categories of bonds: those issued and cancelled in the past, those issued that continue in existence on the date of the indemnity agreement, and those issued on or after the effective date of the indemnity agreement. While the parties differ in the full extent of the 2010 Agreement's coverage, they are in agreement as to its application to bonds executed on or after the date of the Agreement. The Court agrees with this uncontested point: the 2010 Agreement applies to any bond executed contemporaneously with or subsequent to the execution of the agreement and prior to any cancellation of the agreement.

With regard to the disputed extent of the 2010 Agreement's application to bonds executed prior to the date of the agreement, this Court is required to first determine whether, as a matter of law, the agreement is clear and unambiguous on this issue. *City of St. Marys, supra*, at 566. Where the "terms in an existing contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Id.* Nothing in the 2010 Agreement suggests ambiguity.

7

The words themselves are generally common, as such they are "to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Savedoff*, *supra* at 764, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978).

The language of the 2010 Agreement begins with an unambiguous, forward looking, arrangement whereby "the Surety now or in the future" may execute or procure bonds or may "in its sole discretion continue the Bond(s) heretofore executed and may at its sole option forbear cancellation of such Bond(s)." (Doc. #1, Ex. A, p. 1.) Consistent language is used throughout the agreement when describing what the agreement is intended to cover and why:

> WHEREAS, the Undersigned . . have a substantial interest in the Principal obtaining bonds; and, the Principal and/or the Undersigned may desire to or be required to furnish certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds")
>
> WHEREAS, at the request of the Undersigned and upon the express precondition of the execution of this Instrument, and in further consideration of the Surety now or in the future executing or procuring the execution or has previously executed or procured the execution, of such Bonds; and, the Surety may in its sole discretion continue the Bond(s) heretofore executed and may at its sole option forbear cancellation of such Bond(s).
>
> NOW, THEREFORE, in consideration of the recitals above which are incorporated herein and of the execution of any such Bond(s) or the forbearance of cancellation of existing Bond(s) and as an inducement to such execution or forbearance, we, the Undersigned, jointly and severally, agree to and hereby bind ourselves . . . as follows: . . .
>
> **Section 2 – Indemnification.** The Undersigned shall and will at all times defend, when requested by the Surety to do so, and shall and will indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and fees including any attorney fees whatsoever, and for and from any and all liability therefore . . . by reason of executing . . . any said Bond(s) . . . which maybe[sic] already or hereinafter are executed for or at the request

>of the Principal or the Undersigned or any of them, or renewal or continuation thereof . . .

(Doc. #1, Ex. A, p.1). In every instance "previously executed" bonds are addressed as existing obligations that Plaintiff may elect to renew, continue, or forbear from cancelling. Although Defendants urge a contrary interpretation, it is clear that the 2010 Agreement applies to bonds "heretofore" or previously executed that are continued or otherwise forborne from cancellation "upon the express precondition of the execution of this Instrument." (Doc. #1, Ex. A.) Thus, the 2010 Agreement does apply to bonds executed prior to the date of the agreement.

However, this Court finds the 2010 Agreement does not apply so broadly as to revive bonds cancelled before the agreement was executed. The 2010 Agreement explicitly refers to "previously executed" bonds in the context of their continuation or renewal where the "surety," Plaintiff, forbears from cancelling an obligation. The agreement contains no reference to "cancelled bonds." Nothing in this language can be read to revive an obligation the surety has extinguished through cancellation prior to the date of the agreement. The consistent scope described within the four corners of the 2010 Agreement is evident in the provision that preserves Plaintiff's right of indemnity, even after the cancellation of the indemnity agreement:

> **Section 18 – Continuing Obligation, Release of Indemnity.** The Undersigned understand, recognize and agree that this Agreement is continuing obligation . . . until this Agreement shall be cancelled according to its terms. . . . PROVIDED HOWEVER, that as to any and all such Bonds executed or authorized by the Surety prior to effective date of such notice [of cancellation] and as to all and all renewals, continuations and extensions thereof or substitutions therefore regardless of when the same were or are executed, renewed, extended or continued, the undersigned shall be and remain fully liable therefore, as if said notice [of cancellation] had not been served.

(Doc. #1, Ex. A., p. 4) The Continuation Clause expressly holds that bonds "executed or authorized" during the effective dates of the 2010 Agreement will continue to be indemnified

9

under the terms of the agreement, regardless of when their renewal, continuations, or extensions are executed. Thus, the consistently prospective nature of the agreement and its particular application to execution, renewal, continuation, or extension of bonds are made clear. Plaintiff's belief that "previously executed bonds" should be read to implicitly include past, cancelled, bonds as well the existing obligations that Plaintiff may, as the agreement expressly contemplates, forbear from cancelling, extend, continue or renew, would impermissibly expand the "four corners" of the agreement as written. *Inland Refuse*, *supra.*

While Defendants' construction of the 2010 Agreement is clearly too narrow, Plaintiff's is too broad. This Court finds that the language used in the 2010 Agreement consistently refers to two categories of obligations, those previously executed that exist to be continued, renewed or otherwise extended, and those new bonds issued pursuant to the terms of the 2010 Agreement, either on the same date or thereafter. This is entirely consistent with Plaintiff's description of "standard practice among sureties" to require additional indemnity agreements to secure any new credit when existing indemnitors seek to renew or request additional bonds. (Doc. #28, Ex. B, ¶ 5.) Accordingly, this Court concludes that the 2010 Agreement does not apply to the 2000 Bond, as it was cancelled more than two years prior to the agreement and was not extended thereunder. Plaintiff is not entitled to indemnification for an action on the 2000 Bond under the 2010 Agreement.

### b.) Common Law Indemnification and Specific Performance

Having found that the November 29, 2010 General Indemnity Agreement does not apply retroactively to bonds cancelled before the contract was executed, Plaintiff's remaining causes of action, arising out of the same contract, are DISMISSED.

**IV. CONCLUSION**

For the reasons set forth herein, the Motion for Summary Judgment (Doc. #26) filed by Defendants Erin Doskocil and Kirk Doskocil is GRANTED. The Motion for Summary Judgment (Doc. # 27) filed by Plaintiff Capitol Indemnity Corp. is DENIED. This matter is DISMISSED in its entirety as to Defendants Erin Doskocil and Kirk Doskocil.

IT IS SO ORDERED.

 s/John R. Adams_____
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT

**DATED**: SEPTEMBER 30, 2016